Filed 8/24/21  P. v. Lynch CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C087740 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE014700) |
| v. | |
| JORDAN BYERS LYNCH, | |
| Defendant and Appellant. | |

A jury found defendant Jordan Byers Lynch guilty of attempted murder and burglary, with deadly weapon and great bodily injury enhancements.  Defendant also admitted a prior serious felony conviction allegation.  On appeal, he argues his trial counsel was ineffective in failing to request CALCRIM No. 3428 instruction on mental impairment as a defense.  In supplemental briefing, he further argues that his case should be remanded to allow the trial court to exercise its discretion to strike his serious felony enhancement pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill

1

No. 1393) and his case should be remanded to permit the trial court to determine if defendant meets the criteria for pretrial mental health diversion under Penal Code section 1001.36, subdivision (b)(1) (statutory section citations that follow are found in the Penal Code, unless otherwise set forth).

We conclude the case must be remanded conditionally for the reasons identified in defendant's supplemental briefing. We will otherwise affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Defendant was charged in count one with premeditated attempted murder (§§ 664, 187, subd. (a)) and in count two with first degree burglary (§ 459). The information alleged as to both counts that defendant personally used a dangerous and deadly weapon, to wit, a knife (§ 12022, subd. (b)(1)), and that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). The information further alleged that appellant suffered a prior serious felony conviction for robbery under the "Three Strikes Law" (§§ 211, 667, subds. (a), (b)-(i), 1170.12).

While M.R. was on the back porch of her home at 5:30 in the morning on August 9, 2017, a man unknown to her, later identified as defendant, appeared in her yard. She told him to get out of her yard, but defendant said, "I can't. I have to go through your yard." She was afraid and told him again to get out of her yard, but he refused. Defendant then tried to hand her an Electronic Benefit Transfer (EBT) card. He said there was $100 on the card, gave her a pin number, and told her not to say anything to the police. Then defendant walked to the back of her yard and hopped over the fence into a neighboring yard. M.R. ran inside the house, told her son, G.T., that a man had been in their yard. She called the police while G.T. went outside. G.T. went into the backyard and heard someone banging on a window and a woman screaming for help.

That same day, D.T. woke up at about 5:40 a.m. because she heard some noises at her bedroom window. She got up and went to the window where she discovered that

2

someone had removed the window screen. The window was open about one foot. D.T. started to close the window when a bald, very skinny, white male suddenly put his hand on the window. The man, who she identified in court as defendant, was wearing gloves. Defendant said, "Don't close the window. I just want to talk to you. Let me in." D.T. had never seen him before. She told defendant to leave. She tried to close the window, but defendant resisted by pushing back on the window. He said that if she let him in, he would tell her who did this, and D.T. took that to mean that he was not alone. D.T. was able to close the window and then ran into her second bedroom to make sure that window was closed, and she called 911. As she was calling, she ran to the living room which had a sliding glass door to the outside. Defendant was at the sliding door with a metal bar in his hand. He hit the door with the bar and said, "Don't call the cops." He turned around and grabbed something from a table outside and then hit the door again, causing it to shatter. D.T. tried to run for the front door, but defendant came inside the house and grabbed her by the shirt. She felt defendant stab her on her right side but managed to break free and reach the front door. She had trouble unlocking the door. She looked back at defendant and saw a weird smile on his face. As she turned back to the door, she felt defendant stab her in the neck.

Despite being stabbed, D.T. ran out of the house into the driveway calling for help. Defendant ran outside after her but then turned around and ran back into the house. D.T. saw a neighbor, B.F., and asked him to help her. D.T. called 911 again, and as she was talking to dispatch, she saw defendant appear at her front door and look at her. He retreated inside but then came out of the house with his hands up. Then he looked around and started running away. B.F. ran after defendant and tackled him to the ground. Another neighbor, J.E., came outside and helped subdue defendant. J.E. saw defendant wearing blue latex gloves and holding a knife. J.E. took the knife from defendant's hand and threw it on the sidewalk. Defendant was wide-eyed and foaming from the mouth. He threatened J.E. and also said something like, "It's not my fault. They killed the boy,

3

they killed a boy. I didn't do it." J.E. later told police that defendant seemed under the influence of drugs and was "higher than a kite." B.F. claimed defendant seemed high and irrational. The two neighbors helped pin defendant down until officers arrived.

Officer Joshua Page responded to the call. Defendant's pupils were dilated. (Officer Page explained that when someone uses a nervous system stimulant, it causes pupil dilation. (Defendant was sweating profusely over his entire body even though it was 59 degrees, which indicated to Officer Page that defendant was under the influence of a central nervous system stimulant. Defendant's saliva was a bright white color with a sticky, foamy consistency making it harder to spit out, consistent with smoking a drug.

Defendant tested positive for methamphetamine in the amount of 148 nanograms per milliliter. That amount was more than the therapeutic range for the drug and is indicative of methamphetamine abuse. A search of defendant's EBT card showed it had a balance of $106.18 at the time of the incident.

D.T. was transported to the hospital with stab wounds to her neck and side, which had resulted in a kidney laceration. She underwent emergency surgery and was in the hospital for three days.

Defendant's father testified that defendant was intermittently living with him, homeless, or incarcerated. Defendant had been using methamphetamine for years. In April 2017, defendant was chasing things around the house and having delusions that someone was in their home trying to injure their family. The police were called, and defendant reported that his family had allowed his uncle to perform surgery on his head. Defendant tested positive for methamphetamine and marijuana.

In July 2017, a 72-hour hold was placed on defendant because he appeared to be a danger to himself, danger to others, or gravely disabled. Dr. Bhavin Parikh, a board certified psychiatrist specializing in mental health disorders and chemical dependency attended appellant at the hospital from July 12 to July 14, 2017. He had tested positive for methamphetamine and marijuana. He was experiencing a delusion and visual

4

hallucination; he was seeing small people coming out of the light socket. Dr. Parikh initially diagnosed him with psychotic disorder, not otherwise specified, as well as amphetamine addiction and dependency, cannabis dependency, alcohol dependency and anti-social personality disorder. Dr. Parikh summarized defendant's diagnosis as amphetamine-induced psychosis and anti-social personality disorder and, in observing him ruled out schizophrenia. He testified defendant had a classic case of drug-induced psychosis and defendant improved very quickly when he was off of the methamphetamine, which is uncommon for patients with schizophrenia. Dr. Parikh and the outpatient psychiatrist did not believe defendant had an underlying psychotic disorder other than that triggered by methamphetamine use.

On June 14, 2018, the jury found defendant guilty on both charges and found the allegations to be true with the exception of the premeditation allegation as to count one. Defendant subsequently admitted the prior serious felony conviction. The court thereafter sentenced defendant to a term of 23 years in state prison, as follows: on count one (attempted murder), the midterm of seven years, doubled pursuant to the Three Strikes Law, plus one year for the arming allegation and three years for the great bodily injury; on count two (burglary), the midterm of four years, stayed pursuant to section 654, plus five years for the prior serious felony conviction.

## DISCUSSION

### I

### *Ineffective Assistance of Counsel*

Defendant contends that he was denied his constitutional right to the effective assistance of counsel at trial because counsel failed to request a CALCRIM No. 3428 pinpoint instruction explaining his mental impairment defense. The People respond that even assuming trial counsel performed deficiently, defendant suffered no prejudice under the facts of this case.

5

The burden is on defendant to establish ineffective assistance of counsel by a preponderance of the evidence. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218.) To do so, a defendant "must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696 [80 L.Ed.2d 674, 693] (*Strickland*).)

On direct appeal, as here, this burden is stringent. When the record on appeal " ' "sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; see *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [ineffective assistance claim properly resolved on direct appeal only where record affirmatively discloses no rational tactical purpose for counsel's actions].)

Further, the defendant must affirmatively prove prejudice. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Defendant must show a reasonable probability of a more favorable result. (*People v. Ledesma, supra*, 43 Cal.3d at pp. 217-218.) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) Mere speculation does not meet the Sixth Amendment standard for demonstrating prejudice. (*In re Clark* (1993) 5 Cal.4th 750, 766.) The reviewing court does not need to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant. (*Strickland, supra*, 466 U.S. at p. 698.)

CALCRIM No. 3428 provides in relevant part as follows: "You have heard evidence that the defendant may have suffered from a mental (disease[,]/ [or] defect[,]/

6

[or] disorder). You may consider this evidence only for the limited purpose of deciding whether, at the time of the charged crime, the defendant acted [or failed to act] with the intent or mental state required for that crime. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant acted [or failed to act] with the required intent or mental state."

Defendant contends he was entitled to the CALCRIM No. 3428 instruction because of his defense that he did not form the requisite intent for murder because of symptoms of a mental disorder he was suffering at the time. He contends that defense counsel was ineffective because she failed to request CALCRIM No. 3428, despite the fact that substantial evidence, including the expert testimony of Dr. Parikh, had been presented which supported the defense and provided a basis upon which the jury could have concluded that defendant had not formed the requisite intent for murder in any degree. Defendant argues that since it was not disputed that he stabbed D.T., the key to his defense was his intent.

We recognize the crux of the defense was defendant's intent at the time of the stabbing. However, we do not agree that we can determine in this appeal that defense counsel's decision not to request CALCRIM No. 3428 prejudiced defendant. Even assuming, arguendo, that counsel's failure to request the instruction was below the standard of care, defendant has not affirmatively shown the second required element of an ineffective assistance claim, prejudice.

The omission of CALCRIM No. 3428 could not have misled the jury as to the intent element of any of the charged crimes or the lesser included offenses. The jury instructions as a whole correctly stated the applicable law and instructed on the necessary elements. CALCRIM No. 3428 "does not delineate or describe an element of an offense. Rather, it is a pinpoint instruction relating particular facts to a legal issue in the case. [Citation.]" (*People v. Larsen* (2012) 205 Cal.App.4th 810, 830.) In light of the jury instructions that were given to the jury, including the voluntary intoxication instruction,

7

and the evidence and arguments of counsel, the jury was able to consider whether defendant's methamphetamine-induced psychosis prevented him from forming the requisite intent on both charges and whether it prevented him from premeditating and deliberating the murder. The jury was properly instructed about assessing the testimony of expert witnesses like Dr. Parikh on defendant's drug use and psychological state. Nothing in the instructions suggested to the jury that it should discount defendant's evidence regarding his mental state nor precluded the jury from fairly assessing that evidence in its deliberations related to defendant's mental state.

The jury was also given numerous relevant instructions stating the applicable law and required elements of the charges. Included in the instructions were CALCRIM Nos. 225 and 252 regarding intent, CALCRIM No. 332 concerning assessing the testimony of an expert witness such as Dr. Parikh, CALCRIM No. 601 on premeditation and deliberation, and CALCRIM No. 625 regarding defendant's voluntary intoxication. In closing argument, defendant's attorney used the instructions, particularly CALCRIM No. 601, to argue that defendant's mental impairment caused by his intoxication prevented him from forming the requisite intent to commit the crimes for which he was convicted.

Defense counsel pointed out the testimony that defendant had a long-term history of methamphetamine use and the medical expert's opinion that could permanently impact thought process. Counsel argued that defendant was guilty of only assault with a deadly weapon, but not guilty of attempted murder or burglary. The focus of the argument was on the evidence demonstrating defendant's impairment due to the methamphetamine use, including the facts of defendant's delusions in the months leading up to the stabbing. She also focused on CALCRIM No. 601 and defendant's inability to deliberate or form a plan due to the methamphetamine use.

The prosecutor also focused the jury on the question of intent and argued: "What the crux of this case is, the reason you are here is to decide whether or not the defendant,

8

because of his voluntary -- his voluntary use of methamphetamine was so high that he was unable to formulate the intent to kill or the intent to commit assault as he was entering doing the burglary that is charged in Count Two. That is really what you are here to decide."

The record shows the jury carefully considered defendant's intent, finding him guilty of attempted murder but finding the premeditation allegation not true.

Defendant has not shown a more favorable outcome would have been likely if the jury had been instructed with CALCRIM No. 3428. (See *People v. Larsen, supra*, 205 Cal.App.4th at pp. 833-834 [failure to give CALCRIM No. 3428 not error in light of "forceful" evidence against the defendant, propriety of instructions given to jury, and because the defendant was not denied right to present mental disorder evidence]; see also *People v. King* (2010) 183 Cal.App.4th 1281, 1312 [given overwhelming evidence against the defendant, it was not reasonably probable defendant would have obtained a better outcome in the absence of counsel's errors].) We note that the evidence defendant suffered from a mental disease or defect was questionable. Both Dr. Parikh and the outpatient psychiatrist did not believe defendant had an underlying psychotic disorder other than that triggered by methamphetamine use. Because of the expert testimony indicating defendant did not have a mental disease or defect, there was no reasonable probability of a different result if defendant had been given an instruction that is predicated on defendant having a mental disease or defect

We cannot conclude that a more favorable outcome would have been likely if the jury had been instructed with CALCRIM No. 3428.

II

*Senate Bill No. 1393*

Defendant argues in his first supplemental brief that the passage of Senate Bill No. 1393 requires remand so that the trial court may exercise its newly legislated

9

discretion regarding the imposition of sentence for the prior serious felony conviction enhancements (§ 667, subd. (a)), which was previously mandatory.  The People concur.  We accept this concession and agree that Senate Bill No. 1393 is retroactive to defendant's case.

"On September 30, 2018, the Governor signed Senate Bill No. 1393 which, effective January 1, 2019, amends sections 667[, subdivision] (a) and 1385[, subdivision] (b) to allow a court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes.  (Stats. 2018, ch. 1013, §§ 1-2.)" (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.)

Under *In re Estrada* (1965) 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.)  Nothing in the text of the bill suggests any legislative intent that the amendments apply prospectively only, "it is appropriate to infer, as a matter of statutory construction, that the Legislature intended Senate Bill [No.] 1393 to apply to all cases to which it could constitutionally be applied, that is, to all cases not yet final when Senate Bill [No.] 1393 becomes effective on January 1, 2019.  [Citations]" (*People v. Garcia, supra*, 28 Cal.App.5th at p. 973.)  Defendant's case was not final on the statute's operative date, January 1, 2019.  (See *People v. Vieira* (2005) 35 Cal.4th 264, 306.)

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.]  In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless

10

the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

The record before us does not clearly show that the trial court would have declined to strike one or more of defendant's prior serious felony convictions for sentencing purposes if it had known it had the discretion to do so. Accordingly, we agree with the parties that remand is appropriate in this case to allow the trial court to exercise its discretion as to whether to strike one or more of his prior serious felony convictions for sentencing purposes.

III

*Mental Health Diversion*

Defendant contends in his second supplemental brief, and the People concede, that the matter should be remanded to permit the trial court to determine if appellant meets the criteria in section 1001.36, subdivision (b)(1) for pretrial mental health diversion. We agree.

Shortly after defendant's trial, "[i]n June 2018, the Legislature enacted Penal Code sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health disorders. (Stats. 2018, ch. 34, § 24.)" (*People v. Frahs* (2020) 9 Cal.5th 618, 624 (*Frahs*).) Section 1001.36 allows a trial court to grant pretrial diversion to a defendant suffering from a qualifying mental disorder if certain criteria are satisfied. (*Id.*, subd. (a).) One of the qualifying mental illnesses is schizoaffective disorder. (*Id.*, subd. (b)(1)(A).) Qualifying criteria include satisfying the court that "the defendant's mental disorder was a significant factor in the commission of the charged offense[;]" securing the "opinion of a qualified mental health expert, [that] the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment[;]" and satisfying the court "that the defendant will

11

not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (*Id.,* subd. (b)(1)(B)(C)(F).) If a trial court grants pretrial diversion and later finds the defendant has satisfactorily completed the specified mental health program, the trial court "shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id.,* subd. (e).) Section 1001.36 was amended in 2020 to remove defendants accused of certain crimes from pretrial diversion eligibility, but none of those crimes are at issue in this case. (*Id.,* subd. (d); see also Stats. 2019, ch. 497, § 203.)

Defendant filed a supplemental brief arguing that he is entitled to a remand to allow the trial court to determine whether to grant him a section 1001.36 diversion to treat his schizoaffective disorder. While schizoaffective disorder was not the diagnosis presented at trial, the probation report states that defendant's mother told the police that defendant had been previously diagnosed with schizoaffective disorder on two separate occasions. The People filed a response agreeing with defendant on this point.

Our Supreme Court has concluded that "section 1001.36 applies retroactively." (*Frahs, supra,* 9 Cal.5th at p. 637.) Additionally, the Court found that in cases where judgment was entered before section 1001.36's enactment, "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when . . . the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion--the defendant suffers from a qualifying mental disorder. [Citation.]" (*Frahs,* at p. 640.)

Based on *Frahs* and defendant's claim of a schizoaffective disorder diagnosis, as well as the People's concession, we grant the defendant a conditional limited remand to determine his eligibility for a section 1001.36 mental health diversion.

12

## DISPOSITION

We remand this matter to the trial court to consider whether defendant is eligible for pretrial diversion under section 1001.36. If the trial court grants section 1001.36 pretrial diversion, and defendant successfully completes a diversion program as determined by section 1001.36, the judgment shall be vacated. If either the trial court denies pretrial diversion pursuant to section 1001.36 or if defendant fails to successfully complete a diversion program, then the court shall reinstate defendant's convictions and conduct further sentencing proceedings as appropriate at which time the trial court shall consider whether to exercise its discretion under Senate Bill No. 1393. In all other respects, the judgment is affirmed.

 

_____

HULL, J.

We concur:

_____

RAYE, P. J.

_____

MURRAY, J.

13